AO 106 (Rev. 06/09)    Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| THE PREMISES LOCATED AT: **222 Marilyn** ) | Case No. 4:21 MJ 1419 JMB |
| **Estates Drive, St. Louis, Missouri, 63123** ) | |
| (hereinafter "**Residence #1**"), more fully described ) | SIGNED AND SUBMITTED TO THE COURT |
| in ATTACHMENT A. ) | FOR FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I,  Jeremy Johnson , a federal law enforcement officer or an attorney for the government request
a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

THE PREMISES LOCATED AT: **222 Marilyn Estates Drive, St. Louis, Missouri, 63123** (hereinafter
"**Residence #1**"), more fully described in ATTACHMENT A.

located in the _____ EASTERN _____ District of _____ MISSOURI _____, there is now concealed

see ATTACHMENT B LIST.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✓ evidence of a crime;
- ✓ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 841(a)(1), 5861 | Distribution of Controlled Substance, Possession or making a |
| Title 18, U.S.C. §§ 922, 8421 | a Destructive Device without NFA Registration, Felon in Possession |
| | of a Firearm, Prohibited Person Possessing Explosives Affecting |
| | Interstate Commerce |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

- ✓   Continued on the attached sheet.
- ❑   Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
  I state under penalty of perjury that the foregoing is true and correct.

_____
*Applicant's signature*

Jeremy Johnson, Special Agent ATF
*Printed name and title*

Sworn, to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:  _____ November 19, 2021 _____

_____
*Judge's signature*

City and State:  _____ St. Louis, MO _____

Hon. John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*
AUSA: LISA YEMM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF ⟩
⟩
THE PREMISES FURTHER DESCRIBED ⟩
AND DEPICTED IN ATTACHMENT A. ⟩
⟩
⟩

No. 4:21 MJ 1419-1421 JMB

**FILED UNDER SEAL**

SIGNED AND SUBMITTED TO THE COURT FOR FILING
BY RELIABLE ELECTRONIC MEANS

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jeremy Johnson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a search warrant authorizing the examination of:

      a.   The premises located at **222 Marilyn Estates Drive, St. Louis, Missouri, 63123** (hereinafter "**Residence #1**"); and

      b.   The premises located at **Storage Unit 3266 in U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri 63102** (hereinafter "**Storage Unit #1**");

      c.   The premises located at **Storage Unit 1146 in U-Haul Moving & Storage of Dutchtown, 4230 Gravois Avenue, St. Louis, Missouri 63116** (hereinafter "**Storage Unit #2**");

      d.   The premises located at **Storage Unit 3140 in U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri 63102** (hereinafter "**Storage Unit #3**");

As further described in Attachment A1, A2, A3, and A4 for the things described in Attachment B.

1.       I, Jeremy Johnson, am an investigative and law enforcement officer of the United

States and am empowered by law to conduct investigations of and to make arrests for offenses in

violation of the Federal Narcotics Trafficking Laws and the Federal Firearms Laws, including Title

26 United States Code 5861, Title 18 United States Code Sections 923(a), and Title 18 United States Code 922(a)(1)(A).  I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and am currently assigned to the St. Louis Group I Field Office. Prior to my employment with ATF, your affiant was a sworn police officer with the St. Louis Metropolitan Police Department.  Prior to being a law enforcement officer, I served in the United States Marine Corps for approximately ten years.  During the course of my law enforcement career, your Affiant participated in numerous investigations involving controlled substances and firearms offenses. Your affiant has also conducted a variety of investigations of the trafficking and distribution of illegal narcotics.  These investigations have led to the seizure of narcotics, weapons, and United States Currency.  Your affiant has later presented these cases to State and Federal courts for prosecution.  Your affiant has participated in numerous drug related training courses throughout my law enforcement career.  Your affiant is familiar with and have used various methods of investigations which include electronic surveillance, interviews of suspects and witnesses, search warrants, arrest warrants, and the handling of confidential informants.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1)

2

(Possession with Intent to Distribute Controlled Substances) and 5861 (Possession or making a

Destructive Device without NFA Registration) and Title 18, United States Code, Sections

922(g)(1) (Felon in Possession of a Firearm) and 8421 (Prohibited Person Possessing Explosives

Affecting Interstate Commerce) ("the subject offenses") have been committed by JUSTIN

NEILSEN or other persons known and unknown.  There is also probable cause to search the

**Residence #1**, **Storage Unit #1**, **Storage Unit #2**, and **Storage Unit # 3** for evidence of these

crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATIONS TO BE SEARCHED

4.      The locations to be searched are:

a.   The premises located at **222 Marilyn Estates Drive, St. Louis, Missouri, 63123**
(hereinafter "**Residence #1**"); to include the residence thereon, further described as
a one-story, brick and siding single family home with an attached garage, and the
with residence number "222" clearly visible on the front of the residence, as
depicted in Attachment A1;

b.   The premises located at **Storage Unit 3266 in U-Haul Storage & Moving of
Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri 63102**
(hereinafter the "**Storage Unit #1**"); further described as storage unit with a
10x10x10 interior, with an orange door, and with the number "3266" on the front
of the door as depicted in Attachment A2; and

c.   The premises located at **Storage Unit 1146 in U-Haul Moving & Storage of
Dutchtown, 4230 Gravois Avenue, St. Louis, Missouri 63116** (hereinafter the
"**Storage Unit #2**"); further described as storage unit with a 10x10x10 interior, with
an orange door, and with the number "1146" on the front of the door as depicted in
A3; and

d.   The premises located at **Storage Unit 3140 in U-Haul Storage & Moving of
Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri 63102**
(hereinafter the "**Storage Unit #3**"); further described as storage unit with a

3

10x15x10 interior, with an orange door, and with the number "3140" on the front of the door as depicted in Attachment A4.

**PROBABLE CAUSE**

5.      For the reasons set out in this Affidavit, there is probable cause to believe that the subject offenses been committed, are being committed, and will continue to be committed by JUSTIN NEILSEN, and others known and/or unknown to agents.  Further, there is probable cause to believe that evidence of the subject offenses will be located at **Residence #1**, a residential home in which investigators believe NEILSEN resides.  Also, there is probable cause to believe that evidence of the subject offenses will be located at **Storage Unit #1**, **Storage Unit #2**, and **Storage Unit #3** storage units in which investigators believed NEILSEN stores belongings, including contraband.

**A. DEA INVESTIGATION INTO NEILSEN IN MAY 2021 FOR DRUG TRAFFICKING.**

6.      In May of 2021, investigators with the Drug Enforcement Administration ("DEA") were investigating NEILSEN relative to the sale of methamphetamine.  On May 5, 2021, DEA investigators conducted a controlled purchase of methamphetamine from NEILSEN, during which a confidential source (CS#1)[1] and an undercover law enforcement office (UC) purchased what was

---

[1] CS#1 has arrests for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but no felony convictions.  CS#1 was arrested ▮▮▮▮▮▮▮▮▮▮▮▮ was providing information in hopes of receiving judicial consideration in that case.  CS#1

4

later confirmed by laboratory testing to be approximately 166 grams of actual methamphetamine. At the time of the drug transaction, NEILSEN was accompanied by two associates who were later identified as Dillon JOHNSON and Roni RENDA.  RENDA is believed to be in a romantic relationship with NEILSEN.

7.      During the May 5, 2021 narcotics transaction, CS#1 and the UC met NEILSEN and his associates, at NEILSEN's direction, at 102 Evans, St. Louis, Missouri, the site of closed bar. CS#1 arranged the transaction by contacting NEILSEN on his cellular telephone.  It was agreed CS#1 and the UC would meet NEILSEN to purchase $3600 worth of methamphetamine. When CS#1 and the UC arrived at 102 Evans, the meeting location, the UC remained inside his own vehicle while CS#1 got out to talk with NEILSEN and his associates.  CS#1 reported that NEILSEN was selling two firearms that were located in the vehicle being utilized by NEILSEN and his associates.  NEILSEN and JOHNSON were both armed with handguns.  During the transaction, NEILSEN and JOHNSON's source of supply arrived with the methamphetamine. After procuring the methamphetamine, NEILSEN and JOHNSON entered the closed bar, along with RENDA, and CS#1 accompanied them.  Inside, NEILSEN and JOHNSON weighed the

---

provided reliable information regarding Justin NEILSEN and the distribution of methamphetamine by NEILSEN.  CS#1 made a series of recorded phone calls to NEILSEN and arranged for the purchase of methamphetamine directly from NEILSEN.  The calls were made in the presence of agents and were recorded.  The information led to the successful purchase of methamphetamine from NEILSEN as described herein.  All information provided by CS#1 has been corroborated and has proven to be truthful.

methamphetamine and provided a portion to CS#1. CS#1 then exited the bar, returned to the UC's vehicle, and provided the methamphetamine to the UC.

**B. INITIATION OF ATF INVESTIGATION INTO NEILSEN'S ILLEGAL POSSESSION OF FIREARMS AND SALES OF NARCOTICS.**

8.      In October 2021, ATF learned that NEILSEN was in possession of firearms and was selling controlled substances based upon information from a Sunset Hills Police Department Confidential Informant 159A (CS#2). [2]

9.      On October 17, 2021, Sunset Hills Police Sergeant Jeffrey Senior and Police Officer Ryan met with CS#2. The entire meeting was recorded, and the following was reported to ATF:

   a.   CS#2 called telephone number (314) 379-2939; a number reportedly associated with NEILSEN. CS#2 stated he/she needed an ounce, referring to methamphetamine. NEILSEN confirmed he had an ounce. NEILSEN then spoke about providing a firearm to CS#2. NEILSEN stated he had a 9mm firearm available. NEILSEN also stated he had a SKS, two tactical shotguns, and carbine in his storage unit. NEILSEN acknowledges he once possessed of a rocket launcher.

---

[2] CS#2 has a misdemeanor arrest but no felony convictions. CS#2 has numerous felony arrest ████ The arrest includes ██████████████████████████████████████████████████████████████████ ████████  CS#2 is assisting law enforcement in hopes of receiving consideration on recent arrests ███████████ ████████████████████  CS#2's information has proven reliable, however, because (among other reasons) it was corroborated by investigative surveillance, as described in this affidavit.

CS#2 asked NEILSEN about purchasing hand grenades. NEILSEN denied ownership of the grenades. After the phone call was concluded CS#2 told police he/she had seen the hand grenades over the summer, while CS#2 was seated in NEILSEN's vehicle. There were 5 grenades and were last seen in a small hard sided suitcase. The grenades were further described as having ridges and shaped like a soda can. CS#2 thought the grenades were in a storage unit at Storage of America, 4327 Gustine Avenue, St. Louis, 63116.

10.     On October 22, 2021, the ATF opened an investigation into NEILSEN's suspected violation of Prohibited Person Possessing Explosives Affecting Interstate Commerce, 18 USC 842l, and Possession or making a Destructive Device without NFA Registration, 26 USC 5861. A criminal history inquiry was conducted on NEILSEN and revealed numerous felony arrests for firearms and possession of narcotics. NEILSEN has one felony conviction from Madison County, Illinois for possession of methamphetamine with court case number: 18CF00002191.

## C. ATF INVESTIGATION INTO NEILSEN'S ACTIVITY AT STORAGE OF AMERICA, 4327 GUSTINE AVENUE AND POTENTIAL POSSESSION OF EXPLOSIVE DEVICES.

11.     On October 22, 2021, your affiant went to Storage of America, located at 4327 Gustine Avenue. Your affiant spoke with the manager of the facility, Matt Nicks. Mr. Nicks did a computer inquiry of the facility's database for NEILSEN. According to the inquiry, NEILSEN had a previous account at the facility. NEILSEN rented storage unit 422 but moved out of the unit on December 12, 2020. NEILSEN then moved into storage unit 421 but moved out of that unit on

7

March 22, 2021. Additionally, NEILSEN had an outside parking spot at the facility labeled OP12. NEILSEN rented OP12 from October 31, 2020, until July 2, 2021. NEILSEN's access code to enter the facility had been deactivated and was verified to no longer work.

12.    On October 23, 2021, your affiant debriefed CS#2. CS#2 stated he/she saw the hand grenades at a storage facility: Storage of America, 4327 Gustine Avenue, St. Louis, 63116, approximately four months ago. The grenades were lemon shaped and had rusted tops. CS#2 stated NEILSEN, and Dave Flood (W/M approximately 35 years old) stole the grenades and "full auto" rifles from a federal storage unit. CS#2 provided NEILSEN's Instagram username as: "handsome.devil.1983" which was later used to confirm NEILSEN's identity with Missouri Department of Revenue's driver license picture. NEILSEN told CS#2 he was planning to move his storage unit to U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri, which is the location of **Storage Unit #1.**

13.    On October 25, 2021, Sunset Hills Police Sergeant Jeffrey Senior, Police Officer Ryan, and your affiant met with CS#2. A recorded call was placed to NEILSEN. During the call, NEILSEN requested the storage unit be rented in CS#2's name. NEILSEN stated he wanted the storage unit on the 3rd floor because he did not want to have to walk between multiple floors to go to his storage units. During the conversation NEILSEN advised that he was cleaning his SKS, a newly acquired firearm which was discussed in the previous conversation.

8

**D.  IDENTIFICATION OF RESIDENCE #1.**

14.     Following the recorded phone call, CS#2 stated NEILSEN was residing at **Residence #1,** but CS#2 could not provide the exact address at the time.  CS#2 gave approximate directions to law enforcement.  CS#2 also stated NEILSEN was driving a silver Audi SUV.  Your affiant drove to the vicinity of **Residence #1** and located the silver Audi in the driveway of **Residence #1.**  Your affiant contacted Ameren to conduct an account holder inquiry for **Residence #1**.  The account holders were Mark DEWITT and Barbara DEWITT.  Their account had been active since January 2006.

15.     On November 2, 2021, at approximately 5:30 pm, ATF Special Agents installed a surveillance device in the area of **Residence #1**. The device was aimed in the direction of the front door and garage of **Residence #1**. During the course of the investigation your affiant saw NEILSEN an RENDA exit and enter **Residence #1**.

**E.  IDENTIFICATION OF STORAGE UNIT #1.**

16.     On November 1, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your affiant.  Sergeant Senior advised of new information from CS#2.  CS#2 provided the following:

> a.   NEILSEN had a storage unit at U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri.  The storage unit's number was 3266, **Storage Unit #1,** and it was rented by Roni RENDA.  NEILSEN had converted the SKS into a fully automatic.  NEILSEN showed CS#2 a selector switch and had "chopped off" most of the wooden stock to make the firearm more concealable.

9

**F.  INVESTIGATOR REVIEW OF NEILSEN'S RECENT CRIMINAL ACTIVITY.**

17.     On November 1, 2021, your affiant obtained several St. Louis Metropolitan Police Department (SLMPD) reports regarding NEILSEN.  Below are concise details from some of the reports:

a.  On October 22, 2020, and according to SLMPD incident report: 20-048011, a search warrant was executed, in the city of St. Louis, for the suspicion of illegal narcotics after an investigation of NEILSEN.  Suspected narcotics, pistol holsters, firearm magazines, and assorted ammunition were found in an apartment where NEILSEN had resided.  Additionally, a search warrant was executed to search two storge units, associated with NEILSEN, at Storage of America, 4327 Gustine Avenue, St. Louis.  In storage unit 422, suspected narcotics, firearm magazines, and assorted ammunition were found.  In storage unit 421, suspected narcotics, firearm magazines, and assorted ammunition were found.  Of note, two witness stated they had saw NEILSEN with narcotics and firearms in the storage unit, prior to the search of unit 421.  NEILSEN was later entered wanted for "delivery of a controlled substance," possession of paraphernalia for amphetamines," possession of a controlled substance," and two other misdemeanors.

b.  On March 30, 2021, and according to SLMPD incident report: 21012685, NEILSEN was arrested following an investigation of "shots fired just occurred." NEILSEN initially fled from police on foot but quickly detained.  NEILSEN was

10

in possession of a firearm.  Later, during the investigation a grey and black backpack was discovered.  The bag was searched and revealed suspected narcotics. The suspected narcotics were sent to the SLMPD laboratory.  The analysis of the items in the grey and black bag revealed the presence of methamphetamine, cocaine, THC, and hydrocodone.

c. On June 25, 2021, and according to SLMPD incident report: 21027049, NEILSEN was arrested for active felony warrants.  During the arrest, NEILSEN resisted and was pepper sprayed, and tased.  Search incident to arrest revealed NEILSEN in possession of suspected narcotics and a firearm.

## G. FURTHER INVESTIGATION INTO STORAGE UNIT #1 AND IDENTICATION OF STORAGE UNIT #2.

18.     On November 2, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your affiant.  Sergeant Senior advised of new information from CS#2.  CS#2 provided the following:

a. NEILSEN had rented a U-Haul truck and rented a storage unit at U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri, which is the location of **Storage Unit #1.**  The moving truck was to be used to transfer NEILSEN's belongings from the Storage of America storage unit to the new U-Haul unit.  Also, NEILSEN attempted to get into a storage unit at the U-Haul in Dutchtown but had trouble accessing the unit. NEILSEN stated he would have to break into the storage unit.  The Dutchtown unit had the name "Garrett

11

Green" on the account (this unit was later located and identified by investigators as **Storage Unit #2**).   Finally, NEILSEN sold his silver Audi and was riding a stolen Ducati motorcycle.

19.     On November 3, 2021, your affiant conducted surveillance of **Residence #1.**  In the driveway of the residence was a U-Haul truck bearing Arizona license plate: AL35733 and with T-Number: JH3081B.

20.     Your affiant drove to U-Haul Storage & Moving of Downtown St. Louis and spoke with General Manager Jacob Langford.  Mr. Langford confirmed the U-Haul truck, with the previous mention identifiers, was rented to Roni RENDA.  RENDA's customer information provided the following:

   a.   Address: 514 Averill Avenue, Ferguson, Missouri 63135

   b.   Primary Phone: 417-908-7187

   c.   Email: pitbullmama101@gmail.com

   d.   License MO – A035121002

   e.   Birth Date – 8/10/1998

Additionally, the U-Haul truck was rented from U-Haul Moving & Storage of Dutchtown, 4230 Gravois Avenue, St. Louis, Missouri.  The truck was rented on November 2, 2021, at 3:44 pm and was due back on November 4, 2021, at 2:45 pm.  The rental truck was secured online with a prepaid VISA: 440393AAXYXCKB9882 and the same VISA was used at U-Haul Moving & Storage of Dutchtown when the truck was dispatched to RENDA.  RENDA's driver's license was scanned

by U-Haul.  An additional contact was listed as Brandon MITKOS with a phone number of (314) 379-2339.  Mr. Langford also stated U-Haul had a promotional offer that came with the rented truck.  With RENDA's rented truck came a one-month free storage unit, which was rented online.  The storage unit was storage unit #: 4309 at the U-Haul Storage & Moving of Downtown St. Louis.  The customer's name on the unit was Tiffany POWERS (W/F 2/14/90) with phone numbers (314) 349-0651 and (314) 610-6636.  POWERS's home address was listed as: 1755 Williamsburg Drive, Barnhart, Missouri.  Additional access and contact on the storage unit was "Verinica Rendez" with an address of **Residence #1**, and a contact number of (314) 555-3367.

21.     While at U-Haul Storage & Moving of Downtown St. Louis, your affiant asked if there were any other storage units that were paid for by VISA: 440393AAXYXCKB9882 or rented by RENDA.  Mr. Langford provided the storage unit of 3266, **Storage Unit #1**.  The customer was Roni RENDA with primary phone number (417) 908-7187 and alternate phone number (314) 379-2939.  The (314) 379-2939 is the same phone number CS#2 used to contact NEILSEN during the recorded calls.  The listed address was 514 Averill Avenue, Ferguson, Missouri.  The storage unit was moved into on June 18, 2021.  The last payment was on October 27, 2021, with a VISA ending in last four of 9882 for $125.90.  Additional contact and access user was listed as Brandon MITKOS.  MITKOS' phone number was listed as (314) 724-6366 and with an address of 2236 Gaine Street, St. Louis, Missouri.

22.     Mr. Langford also explained to your affiant the security system at U-Haul Storage & Moving of Downtown St. Louis.  Every time a storage unit is accessed and closed the latch

13

mechanism recorded the entry and exit.  The property has several surveillance cameras and the storage unit customer enter a code to enter the property, and the elevator.  Mr. Langford stated **Storage Unit #1** was last access on October 21 and October 28, 2021.  Your affiant requested surveillance footage of the last access dates for **Storage Unit #1**.

23.      Your affiant reviewed number police reports from NEILSEN arrest and was able to identify another associate, Frances WOMBLE.

24.      While conducting a social media inquiry, on both WOMBLE's and RENDA's accounts, there were public posts regarding their romantic relationship and love for NEILSEN.

25.      Based on information from CS#2 regarding NEILSEN's statements that he possessed a storage unit under the name Garret Green that he was current locked out of, your affiant responded to U-Haul Moving & Storage of Dutchtown and met with General Manager Keith Sexton.  Mr. Sexton stated his U-Haul store rented the U-Haul truck to RENDA.  Your affiant asked Mr. Sexton about a storage unit being rented to a Garret Green.  Mr. Sexton was surprised by the question because there had been some recent difficulty with the unit.  The storage unit number was 1146, **Storage Unit #2,** and was recently delinquent on paying the rent.  Mr. Sexton stated they contacted Mr. Green and Mr. Green stated he had no storage unit in Dutchtown. Mr. Green further stated he did not reside in Missouri and had no storage unit in Missouri.  Mr. Sexton stated they put an additional padlock on the unit because there was possible fraud with the unit.  Recently, an unknown white male, with a beard, and blond hair came into the U-Haul store to attempt to pay the rent for the unit.  The unknown male description matches the description of

14

NEILSEN.  Mr. Sexton asked for an ID but the unknown male refused and left the store.  The rent was later paid online with a Visa card: 440393AAAXYXCKB9882.  The rent was paid on October 27, 2021.  **Storage Unit #2** is still padlocked by U-Haul for ID verification.

26.     On November 4, 2021, your affiant received the surveillance footage from Mr. Langford, the General Manager of U-Haul Storage & Moving of Downtown St. Louis, regarding **Storage Unit #1**.  The surveillance footage was reviewed by your affiant and on both October 21 and October 28, RENDA and NEILSEN could be seen walking though the U-Haul facility, together.  On October 28, RENDA and NEILSEN were also with two other unknown people.

27.     On November 4, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your Affiant.  Sergeant Senior advised of new information from CS#2.  CS#2 provided the following:

a.  NEILSEN told CS#2 he was going to pack some of his firearms and move them into a storage unit. RENDA, Billy Scoggins (unknown to investigators), and WOMBLE were delivering methamphetamine for NEILSEN.  Mark DEWITT also lived at **Residence #1.**[3]

28.     Additionally, on November 4, 2021, your affiant received requested payment history for prepaid Visa 440393AAAXYXCKB9882, from Keith Seton, General Manager of U-Haul Moving & Storage of Dutchtown, 4230 Gravois Avenue, St. Louis, Missouri.  The payment

_____

[3] This information was corroborated by investigators' review of utilities at **Residence #1**, as described above.

information detailed payments on August 22, 2021 and October 27, 2021, for **Storage Unit #1** and

4309 storage units at U-Haul Storage & Moving of Downtown St. Louis. The Visa was also used

on October 27, 2021, for the **Storage Unit #2** storage unit at U-Haul Moving & Storage of

Dutchtown. Additionally, this is the same Visa which was used to pay for the U-Haul rental truck

by RENDA.

    29.    On November 6, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your

affiant. Sergeant Senior advised of new information from CS#2. CS#2 provided the following:

    a.    CS#2 went to **Residence #1**, where NEILSEN was in possession of one pound of

methamphetamine and had a bookbag full of cash. The cash was estimated to be

between approximately $20,000 and $30,000. NEILSEN was suspicious of

WOMBLE and put the money in a safe located at **Residence #1**. The rented U-

Haul truck had been returned. NEILSEN said all the of his "big guns" were broken

down and put into bag. The firearms were then taken to U-Haul Storage & Moving

of Downtown St. Louis. NEILSEN stated the firearms were in **Storage Unit #1**.

NEILSEN was driving a small white compact sedan.

    30.    On November 9, 2021, your affiant again obtained surveillance footage from Mr.

Langford. Your affiant had learned from the CI, NEILSEN and RENDA had recently returned a

U-Haul truck to U-Haul Moving & Storage of Dutchtown, 4230 Gravois Avenue, St. Louis,

Missouri. The truck was returned on November 6, 2021. Your affiant asked Mr. Langford to

provide the last access dates of **Storage Unit #1**. Mr. Langford stated the last access for the unit

was on November 6, 2021, at approximately 6:30pm.  Your affiant asked Mr. Langford to provide

surveillance footage from last access date and on the same date the footage was provided.  Your

affiant reviewed the surveillance footage and depicted NEILSEN, RENDA, and three unknown

people moving furniture, appliances, and other unknown objects on the third floor of the storage

facility where **Storage Unit #1** is located and was accessed.  The unknown objects were in baskets

with cloth over them, which were large enough to contain and hide firearms.  It should be noted,

on the same date, stationary surveillance captured NEILSEN and RENDA leaving **Residence #1**,

at approximately 4:46 pm.

      31.     On November 10, 2021, your affiant was provided security footage from Keith

Seton, General Manager of from U-Haul Moving & Storage of Dutchtown, 4230 Gravois Avenue,

St. Louis, Missouri.  Your affiant requested security footage of the rented U-Haul truck being

returned.  Mr. Sexton stated the truck was returned after store hours and the keys were dropped

into a drop box.  Mr. Sexton stated the truck was returned at approximately 8:00 pm.  The

surveillance footage was reviewed by your affiant.  Two individuals were seen on video but

because of the distance their identity could not be confirmed.  One individual was wearing a dark

t-shirt and dark pants, matched same clothing of NEILSEN provided by surveillance footage from

November 6, 2021 provided by Mr. Langford.  The other individual was wearing a dark shirt and

white pants, matched same clothing of RENDA provided by surveillance footage from November

6, 2021 provided by Mr. Langford.  A white Chevrolet sedan picked up both individuals after the

truck was on the lot for approximately 24 minutes.  It should be noted, on November 7, 2021,

stationary surveillance captured a white sedan (matching the depiction from the surveillance footage), in the driveway of **Residence #1** at approximately 9:18 am.

## H. DISCOVERY OF STORAGE UNIT #3 AND ADDITIONAL INVESTIGATION OF ACTIVITY AT STORAGE UNIT #1.

32.     On November 18, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your affiant.  Sergeant Senior advised of new information from CS#2.  CS#2 provided the following:

a.   CS#2 advised NEILSEN had an additional storage unit, **Storage Unit #3,** also located at U-Haul Storage & Moving of Downtown St. Louis, 418 S. Tucker Boulevard, St. Louis, Missouri 63102, and that CS#2 took a picture of firearms located **Storage Unit #3**, which had been previously unknown to law enforcement. CS#2 took the photograph on or about November 18, 2021 and provided the photograph to law enforcement, which is included below.

i.   The picture provided by the CI of the firearms shows them in a basket.  The basket resembled the basket from the surveillance footage when RENDA and NEILSEN were moving objects on November 6, 2021, in the U-Haul Storage & Moving of Downtown St. Louis.

18



b.

33.     On November 18, 2021, your affiant went to U-Haul Storage & Moving of Downtown St. Louis.  Your affiant spoke with Customer Service Representative Anthony Sanders. Mr. Sanders was able to provide documentation for **Storage Unit #3**, which corroborated CS#2's information that another storage unit had been rented.  **Storage Unit #3** was rented on November 6, 2021.  **Storage Unit #1** and **Storage Unit #3** are on the same floor.  The customer was Roni RENDA with primary phone number (417) 908-7187.  The listed address was 514 Averill Avenue, Ferguson, Missouri.  The storage unit was moved into on November 6, 2021.  No payment information could be immediately found.  Additional contact and access user was listed as Brandon MITKOS.  MITKOS' phone number was listed as (314) 724-6366 and with an address of 2236 Gaine Street, St. Louis, Missouri. Additionally, Mr. Sanders provided the "user activity by date" report for "Roni RENDA" from November 6, 2021, to November 18, 2021.  Below is a breakdown

19

of **Storage Unit #1** and **Storage Unit #3** being accessed:

| Date | Time | Description | Unit |
|------|------|-------------|------|
| 11/6/2021 | 6:55 pm | Unit Rented | **Storage Unit #3** |
| | 7:05 pm | Unit Opened | **Storage Unit #3** |
| | 7:06 pm | Unit Opened | **Storage Unit #1** |
| | 7:09 pm | Unit Closed | **Storage Unit #1** |
| | 7:20 pm | Unit Closed | **Storage Unit #3** |
| | 8:04 pm | Unit Opened | **Storage Unit #3** |
| | 8:08 pm | Unit Closed | **Storage Unit #3** |
| | 8:11 pm | Unit Opened | **Storage Unit #3** |
| | 8:20 pm | Unit Closed | **Storage Unit #3** |
| | 8:20 pm | Unit Opened | **Storage Unit #3** |
| | 8:21 pm | Unit Closed | **Storage Unit #3** |
| 11/14/2021 | 5:10 pm | Unit Opened | **Storage Unit #3** |
| | 5:16 pm | Unit Closed | **Storage Unit #3** |
| | 5:17 pm | Unit Opened | **Storage Unit #1** |
| | 5:27 pm | Unit Closed | **Storage Unit #1** |
| | 5:38 pm | Unit Opened | **Storage Unit #1** |
| | 5:45 pm | Unit Closed | **Storage Unit #1** |

|  | 6:26 pm | Unit Opened | **Storage Unit #1** |
|--|---------|-------------|---------------------|
|  | 6:27 pm | Unit Closed | **Storage Unit #1** |
|  | 6:46 pm | Unit Opened | **Storage Unit #3** |
|  | 7:05 pm | Unit Closed | **Storage Unit #3** |
|  | 7:07 pm | Unit Opened | **Storage Unit #3** |
|  | 7:08 pm | Unit Closed | **Storage Unit #3** |
| 11/18/2021 | 3:12 pm | Unit Opened | **Storage Unit #3** |
|  | 3:23 pm | Unit Closed | **Storage Unit #3** |
|  | 3:29 pm | Unit Opened | **Storage Unit #1** |
|  | 3:41 pm | United Closed | **Storage Unit #1** |
|  | 3:42 pm | Unit Opened | **Storage Unit #3** |
|  | 3:43 pm | Unit Closed | **Storage Unit #3** |

a.

34.    Based on my training and experience as well as that of the investigative team, as well as the totality of the investigation as described herein, I believe NEILSEN is storing contraband, to include firearms and narcotics, in **Storage Unit #1, Storage Unit #2, and Storage Unit #3**. The same pre-paid VISA is being used to pay for both units for **Storage Unit #1**, and **Storage Unit #2**. **Storage Unit #1**, and **Storage Unit #3** are being rented under the name of NEILSEN's paramour and co-conspirator, RENDA, and **Storage Unit #2** is being rented under

the name of an out-of-state individual with no knowledge of the unit.  Statements by NEILSEN to

CS#2 indicate he was moving firearms and other items into **Storage Unit #1**. CS#2 provided

pictures of firearms in **Storage Unit #3**.  Surveillance demonstrated how both **Storage Unit #1**,

and **Storage Unit #3** being accessed by NEILSEN and RENDA.  Additionally, both **Storage Unit**

**#1**, and **Storage Unit #3** were accessed in the same relative timespan on the same dates.

Statements by NEILSEN to CS#2 indicate he is storing items of such importance to him that he is

planning to break into **Storage Unit #2**; combined with his use of a false name to rent **Storage**

**Unit #2** and history of storing contraband in rented units, I believe he is storing additional firearms

and/or narcotics in **Storage Unit #2**.  It appears based on the totality of the investigation that

NEILSEN is using storage units, including **Storage Units #1, #2,** and **#3**, and **Residence #1**, to

move and store firearms, narcotics, drug paraphernalia, and suspected explosive devices.

## I.   FEDERAL INDICTMENT OF NEILSEN.

35.     On November 10, 2021, a Federal Grand Jury sitting in the Eastern District of

Missouri returned an indictment charging NEILSEN with distributing methamphetamine on May

5, 2021, in violation of Title 21, United States Code, Section 841(a), in Case No. 4:21 CR 00614,

which remains suppressed at the present time.

## J.   ADDITIONAL INFORMATION FROM CS#2 REGARDING ILLICIT DRUG ACTIVITY AT RESIDENCE #1.

36.     On November 12, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your

affiant.  Sergeant Senior advised of new information from CS#2.  CS#2 provided the following:

    a.   CS#2 went to **Residence #1**, where NEILSEN was in possession of a quarter of a pound of methamphetamine.

37.    On November 18, 2021, Sunset Hills Police Sergeant Jeffrey Senior contacted your affiant. Sergeant Senior advised of new information from CS#2. CS#2 provided the following:

    a.   C#2 was at **Residence #1** on or about November 18, 2021 and was able to record a video of suspected narcotics paraphernalia. Additionally, in the video NEILSEN yelling at a RENDA regarding a romantic dispute.

## K. ATF DATABASE QUERY OF NEILSEN.

38.    On November 17, 2021, I conducted a query on NEILSEN through the National Firearm Registration and Transfer Record. No records were located, indicating that NEILSEN did not have any destructive devices and/or firearms registered.

## L. TRAINING AND EXPERIENCE OF INVESTIGATORS

39.    Based upon my experience and my participation in investigations of other drug trafficking organizations involving large amounts of narcotics, I know:

    a.   That narcotics traffickers must maintain on hand large amounts of United States currency to maintain and finance their ongoing narcotics business and often keep said currency in a residence;

b.    That drug traffickers maintain books, records, receipts, notes ledgers, airline tickets, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances;

c.    That these books, records, receipts, notes, ledgers, etc., are maintained where the drug traffickers have ready access to them;

d.    That drug traffickers commonly "front" (provide drugs on consignment) illegal drugs to their customers;

e.    That it is common for dealers to hide contraband, proceeds of drug sales, and records of drug transactions in a residence, among other places;

f.    That persons involved in drug trafficking often conceal in their residences large amounts of currency, financial instruments, and other items of value and/or proceeds of drug transactions as well as evidence of financial transactions relating to obtaining, transferring, secreting or spending of large sums of money made from engaging in narcotics trafficking activities;

g.    That when drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits.  To accomplish these goals, drug traffickers utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts;

h.      That it is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for their distribution elsewhere in the United States. After purchasing drugs, these traffickers will transport or cause to be transported drugs to the areas in which they will distribute the drugs. The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers;

i.      That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in a trafficking organization;

j.      That drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product and usually maintain these photographs in their possession or on their cell phones;

k.      That drug traffickers usually keep near at hand paraphernalia for packaging, cutting, weighing, and distributing of drugs. These paraphernalia include, but are not limited to, scales, spoons, and plastic bags;

l.      That drug traffickers often use firearms, firearm ammunition, and other weapons in furtherance of their drug-related offenses;

m.      Firearms (and related ammunition, firearm parts, firearm accessories) are a tool of individuals engaged in the distribution of controlled substances, and individuals

25

engaged in the distribution of controlled substances often carry firearms or keep firearms at their residences, in their vehicles, and other locations where they sell and store controlled substances;

n.   That drug organizations that utilize houses for the purpose of facilitating drug offenses commonly employ security systems/monitors/cameras and similar video devices to permit the offenders to conduct counter-surveillance to protect their drugs from robberies or to alert the offenders to the presence of the police to facilitate the destruction of evidence;

o.   That drug distributors often use multiple cellular phones to communicate with coconspirators, maintain contact information of drug sources, drug customers, and associates in the drug trade, to document purchases of controlled substances through text messages or electronic mail, to take and maintain photographs related to their narcotics trafficking activities, proceeds, and associates, and to avoid law enforcement detection;

p.   That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular trafficking in controlled substances.

40.   Based upon the foregoing, there is probable cause to believe that evidence of the subject offenses, contraband, fruits of the crime, things otherwise criminally possessed, and which property which is designed or intended for use, or which is or has been used in the commission of

the subject offenses is located at **Residence #1**, **Storage Unit #1**, **Storage Unit #2**, and **Storage Unit #3**.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

41.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search **Residence #1**, **Storage Unit #1**, **Storage Unit #2**, and **Storage Unit #3** described in Attachments A1, A2, and A3 and seize the items described in Attachment B.

42.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**I state under the penalty of perjury that the foregoing is true and correct.**

Respectfully submitted,

JEREMY JOHNSON
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on November ___19___, 2021**

THE HONORABLE JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF MISSOURI

## ATTACHMENT A1

Place to be searched



THE LOCATION TO BE SEARCHED IS THE PREMISES LOCATED AT RESIDENCE #1,
FURTHER DESCRIBED AS A ONE-STORY, BRICK AND SIDING SINGLE FAMILY
HOME WITH AN ATTACHED GARAGE, AND THE WITH RESIDENCE NUMBER "222"
CLEARLY VISIBLE ON THE FRONT OF THE RESIDENCE

**ATTACHMENT B**

**Property to be Seized**

1.      All records and information relating to violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute Controlled Substances) and 5861 (Possession or making a Destructive Device without NFA Registration) and Title 18, United States Code, Sections 922(g)(1) (Felon in Possession of a Firearm) and 8421 (Prohibited Person Possessing Explosives Affecting Interstate Commerce) that constitutes fruits, evidence and instrumentalities of violations those violations involving JUSTIN NEILSEN and others, occurring including:

   a.   methamphetamine, and other controlled substances;

   b.   paraphernalia and tools packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies, and spoons;

   c.   books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances;

   d.   telephone bills, invoices, packaging, cellular batteries and/or charging devices, canceled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

   e.   photographs, in particular photographs of co-conspirators, of assets, and/or controlled substances;

3

f.   contact information of drug sources, drug customers, and associates in the drug trade;

g.   text messages and electronic mail relating to drug trafficking;

h.   United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of cocaine, or which are proceeds from the distribution of cocaine;

i.   books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

j.   papers, tickets, notes, schedules, receipts and other items relating to travel or transportation, including, but not limited to, travel to and from East St. Louis, Illinois, and elsewhere;

k.   Any and all records or documents evidencing possession, use, or ownership of the premises to be search or property to be seized, including but not limited to, utility, telephone and internet service bills, cancelled envelopes, mail, rental payments, or housing agreements;

l.   Firearms and/or weapons;

m.   Cellular telephones; and

4

n. Security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment.

AO 93 (Rev. 11/13)    Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE PREMISES LOCATED AT: **222 Marilyn Estates Drive, St. Louis, Missouri, 63123** (hereinafter "**Residence #1**"), more fully described in ATTACHMENT A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 4:21 MJ 1419 JMB

SIGNED AND SUBMITTED TO THE COURT
FOR FILING BY RELIABLE ELECTRONIC MEANS

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ EASTERN _____ District of _____ MISSOURI _____
*(identify the person or describe the property to be searched and give its location)*:

THE PREMISES LOCATED AT: **222 Marilyn Estates Drive, St. Louis, Missouri, 63123** (hereinafter "**Residence #1**"), more fully described in ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see <u>ATTACHMENT B</u>

**YOU ARE COMMANDED** to execute this warrant on or before <u>December 2, 2021</u>          *(not to exceed 14 days)*
✓ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ John M. Bodenhausen _____.
*(United States Magistrate Judge)*

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and Time issued:   <u>19 Nov. 2021   9:30 a.m.</u>          _____
*Judge's signature*

City and State:   <u>St. Louis, MO</u>          <u>Honorable John M. Bodenhausen, U.S. Magistrate Judge</u>
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (page 2)

| | | |
|---|---|---|
| **Return** | | |
| Case No.:<br>4:21 MJ 1419 JMB | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____          _____

*Executing officer's signature*

_____

*Printed name and title*

## ATTACHMENT A1

Place to be searched



THE LOCATION TO BE SEARCHED IS THE PREMISES LOCATED AT RESIDENCE #1,
FURTHER DESCRIBED AS A ONE-STORY, BRICK AND SIDING SINGLE FAMILY
HOME WITH AN ATTACHED GARAGE, AND THE WITH RESIDENCE NUMBER "222"
CLEARLY VISIBLE ON THE FRONT OF THE RESIDENCE

**ATTACHMENT B**

**Property to be Seized**

1.       All records and information relating to violations of Title 21, United States Code, Sections 841(a)(1) (Possession with Intent to Distribute Controlled Substances) and 5861 (Possession or making a Destructive Device without NFA Registration) and Title 18, United States Code, Sections 922(g)(1) (Felon in Possession of a Firearm) and 8421 (Prohibited Person Possessing Explosives Affecting Interstate Commerce) that constitutes fruits, evidence and instrumentalities of violations those violations involving JUSTIN NEILSEN and others, occurring including:

   a.  methamphetamine, and other controlled substances;

   b.  paraphernalia and tools packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies, and spoons;

   c.  books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances;

   d.  telephone bills, invoices, packaging, cellular batteries and/or charging devices, canceled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

   e.  photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances;

3

f.   contact information of drug sources, drug customers, and associates in the drug trade;

g.   text messages and electronic mail relating to drug trafficking;

h.   United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of cocaine, or which are proceeds from the distribution of cocaine;

i.   books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

j.   papers, tickets, notes, schedules, receipts and other items relating to travel or transportation, including, but not limited to, travel to and from East St. Louis, Illinois, and elsewhere;

k.   Any and all records or documents evidencing possession, use, or ownership of the premises to be search or property to be seized, including but not limited to, utility, telephone and internet service bills, cancelled envelopes, mail, rental payments, or housing agreements;

l.   Firearms and/or weapons;

m.  Cellular telephones; and

4

n.  Security systems, cameras, cables, recording devices, monitors, and other video

surveillance equipment.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | No. 4:21 MJ 1419 JMB |
| | ) | |
| THE PREMISES LOCATED AT: **222 Marilyn** | ) | **FILED UNDER SEAL** |
| **Estates Drive, St. Louis, Missouri, 63123** | ) | |
| (hereinafter "**Residence #1**"), more fully | ) | SIGNED AND SUBMITTED TO THE |
| described in ATTACHMENT A. | ) | COURT FOR FILING BY RELIABLE |
| | ) | ELECTRONIC MEANS |

**MOTION FOR SEALING ORDER**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amanda Fischer, Assistant United States Attorney for said District, and moves this Court for an order directing that the search warrant, along with its application, affidavit, and return, entered by this Court be sealed until May 19, 2022, except for the limited purposes of providing same to defense counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

In support of this Motion, the Government provides the following facts, establishing that (a) the government has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical:

Because this investigation is ongoing and its success would be jeopardized if the contents of the affidavit were made public, and because disclosure of the contents of the affidavit could subject the CS(s) to retaliation and/or physical harm, the Government requests that the affidavit and the accompanying search-warrant documents be sealed for the stated period of time.

WHEREFORE, for the reasons stated above, the Government respectfully requests that the search warrant, along with its application, affidavit, and return, be sealed until May 19, 2022.

Dated this   19th   day of November, 2021.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Lisa M. Yemm*
LISA M. YEMM, #64601MO
Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF: | ) | |
| | ) | |
| THE PREMISES LOCATED AT: **222 Marilyn Estates Drive, St. Louis, Missouri, 63123** (hereinafter "**Residence #1**"), more fully described in ATTACHMENT A. | ) ) ) ) ) | No. 4:21 MJ 1419 JMB |
| | ) | **FILED UNDER SEAL** |
| | ) | |
| | ) ) ) | SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

**ORDER**

On motion of the United States of America, IT IS HEREBY ORDERED that the search warrant, along with its application, affidavit, and return, and this Order issued thereto, be sealed until May 19, 2022, except for the limited purposes of providing same to defendant counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

This Order is based upon the sealed motion of the Government establishing that: (a) the government has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical.

_____
JOHN M. BODENHAUSEN
United States Magistrate Judge

Dated this ____19th____ day of November, 2021.